*Eusebio v. State of Maryland*, No. 3278, September Term 2018
Opinion by Kehoe, J.

**SEARCHES AND SEIZURE – WARRANTS – PARTICULARITY**

A warrant's authorization to search must be limited to the specific areas and things for which there is probable cause to search, and the description of the limited places to be searched must be definite enough to prevent unauthorized and unnecessary invasions. These related requirements—limitedness and definiteness—ensure that a warranted search is carefully tailored to its justifications and cannot lawfully devolve into the wide-ranging exploratory searches the Framers intended to prohibit.

The particularity requirement will not be offended just because the command portion of a warrant reaches further than intended by the officer who drafted it or the judge who signed it. The requirement is not a bar on warrants for the search of two or more places, as long as probable cause exists for each one independently.

**SEARCHES AND SEIZURES – WARRANTS – SCOPE OF WARRANTED SEARCH**

When police execute a search warrant, the Fourth Amendment confines them strictly within the bounds set by the warrant. But in determining where those boundaries lie, we read the language of warrants in context and with the understanding that, although they are legal documents, warrants are drafted by police officers, not legal linguists. Warrants are meant to preclude officers from conducting fishing expeditions into the private affairs of others, but they are not intended to impose a constitutional strait jacket on police.

**SEARCHES AND SEIZURES – REASONABLENESS – WARRANTLESS SEIZURE TO EFFECT SEARCH UNDER WARRANT**

Based on a balancing of the relevant interests, a warrantless seizure of a car to facilitate the warranted search of the same is reasonable under the Fourth Amendment. The state's need to seize a car to perform a warranted search of it is obvious, as police cannot search a car in motion. On the other hand, because police have already gotten a warrant to search the car, its owner's privacy interests have been sufficiently protected by the Fourth Amendment. And the effect of the seizure on the driver's liberty interests is *de minimis*, as he or she is precluded from using the car only for the duration of the search.

**SEARCHES AND SEIZURES – WARRANTS – SEARCH OF "ALL PERSONS"**

Warrant provisions that authorize the search of all persons present at some site certain do not offend the Fourth Amendment, so long as the issuing judge determines there is probable cause to believe anyone present at the anticipated scene will be a participant. Physical presence—and not names, eye color or height—becomes the descriptive fact satisfying the Fourth Amendment's particularity clause.

Warrant provisions that command the search of all persons present who *may* be participating in the criminal conduct investigated, or who *may* be concealing evidence thereof, also do not offend the Fourth Amendment. But this is because they are inoperative. The judge who issues a command to search all present participants leaves it to the executing officers to select the persons to be searched, on the basis of the information the officers have while executing the warrant. These searches cannot be justified on the basis of the warrant, because there was no prior *judicial* determination of probable cause. Police who search someone on the basis of an all-present-participants provision may as well have no warrant at all; they must identify some other grounds to uphold the legality of the search.

Circuit Court for Cecil County
Case No. C-07-CR-18-001144

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 3278

September Term, 2018

_____

ALVIN EUSEBIO

v.

STATE OF MARYLAND

_____

Kehoe,
Nazarian,
Arthur,

JJ.

_____

Opinion by Kehoe, J.

_____

Filed: March 2, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

After the Circuit Court for Cecil County, the Honorable William W. Davis, presiding, denied his motion to suppress 50.2 grams of suspected heroin, appellant Alvin Eusebio entered a conditional guilty plea to one count of possession of heroin with intent to distribute. He was sentenced to five years' incarceration, with all but six months suspended, and three years of supervised probation. In his brief, Eusebio presents three questions, which we have consolidated:

> Did the suppression court err in denying Eusebio's motion to suppress the drug evidence found in a police search of his person?[1]

We conclude the circuit court did not err in denying the motion. Explaining why requires us to examine a rare bird in the ornithology of Maryland's constitutional criminal law: the search of a motor vehicle pursuant to a warrant.[2] It also gives us an opportunity to

---

[1] The questions presented in Eusebio's brief are:

1. Whether the trial court erred in denying a motion to suppress, finding that the language contained in a search warrant described with sufficient particularity the scope of the search?

2. Did the court err in determining that there was a lawful stop of a motor vehicle and its occupants absent probable cause that an offense had been committed and without authorization to effectuate a stop in the warrant?

3. Was there probable cause to determine that Appellant was an individual that may be engaged in the suspected criminal infractions, thereby subjecting him to a search under the warrant?

[2] Professor Wayne LaFave has observed that:

Most likely because it is ordinarily permissible to conduct a warrantless search of an automobile on probable cause, there are comparatively few appellate decisions dealing with the question of how specific a description is required for a warrant to search an automobile.

2 Wayne R. LaFave, *Search & Seizure* § 4.5(d) (5th ed. 2019).

consider the proper scope of a warrant that authorizes the search of a person who happens to be present upon execution of the warrant and who may be a participant in the underlying criminal enterprise.[3]

The search warrant at the heart of this case authorized police to search a suspected drug dealer, his car, "and other person/s found in or upon said premises who may be participating in [the drug-distribution scheme], and who may be concealing evidence, paraphernalia, and/or Controlled Dangerous Substances." When they executed the warrant, the police searched Alvin Eusebio, a passenger in the dealer's car when it was stopped by the police. At a subsequent suppression hearing, the prosecutor took the position that the warrant gave the police an absolute right to search Eusebio simply because he "may" have been a participant in the crime. "Probable cause has nothing to do with" the validity of Eusebio's search, she said.

The prosecutor's view that the police could conduct the search of a person without probable cause is problematic. As we will explain, a determination of probable cause, whether made by a judge in issuing a warrant or later made by a police officer on the scene, is an essential prerequisite to an unconsented-to exploratory search. The notion that, because police had a warrant, probable cause "has nothing to do with" police authority to search a person is not, has never been, and—barring a tectonic change in the Supreme Court's Fourth Amendment jurisprudence—will never be the law.

---

[3] Maryland's appellate courts last addressed this issue in *Griffin v. State*, 232 Md. 389, 393 (1963), and even then not explicitly.

## Background

### The investigation and the warrants

In August 2018, Detective Charles Travis of the Cecil County Drug Task Force witnessed a suspected drug deal in the parking lot of an Elkton gas station. Over the next six weeks, Travis kept tabs on the suspected dealer, Reginald McClure, tracking his whereabouts by in-person surveillance and by an electronic GPS tracker installed on McClure's car pursuant to a court order. During that time, Travis and other members of the Cecil County Drug Task Force witnessed many more suspicious parking-lot transactions. They also tracked McClure's black Infiniti as it made several trips to New York City, staying each time less than an hour before driving back home to Elkton.

On September 17, 2018, Travis applied for two search-and-seizure warrants. In his affidavit in support of that application, Travis recounted in detail what he and other members of the task force had witnessed over the course of their six-week investigation. The affidavit also included more general information about Travis's experience and training, and it outlined some commonalities between what police had theretofore observed in their investigation of McClure and what Travis had seen in prior drug-trafficking investigations. For example, Travis explained that traffickers often "front" controlled dangerous substances to their customers and maintain books and records to keep track of the debts owed to them; that these records and the controlled substances are often found inside the homes and cars of the traffickers; and that people with a history of drug distribution (like McClure) travel to "[s]ource [c]ities" like New York and Philadelphia, staying there "less time than it takes to travel there" (like McClure) "to purchase controlled

dangerous substances." On the basis of all of this information, Travis averred that there was:

> probable cause to believe the laws relating to the illegal Manufacturing, Distribution, Possession with intent to Distribute and Possession of controlled dangerous substances as defined in Sections 5-601 through 5-619 of the Maryland Criminal Law Article are being violated in and upon certain premises, vehicles and persons as described below:
>
> 1) Reginald Auther [sic] McClure. . .
>
> 2) Black 2009 Infiniti, bearing Maryland registration 3DJ2997, VIN: JNKAY01F97M462462
>
> 3) 3504 Spanish Bay Ct, Elkton, Maryland, Cecil County 21921 [detailed description of the residence omitted].

The judge who reviewed Travis's application issued two separate warrants. The caption on the first warrant identified McClure's townhouse apartment at 3504 Spanish Bay Court, Elkton, MD 21921. The caption on the second warrant identified McClure's car by its owner (McClure), its make, year and color ("Black 2009 Infiniti"), as well as its Maryland license-plate number and its vehicle identification number. In all other respects, except for the time of the authorizing judge's signature, the warrants were identical. Both listed the same suspected criminal violations and incorporated by reference the warrant application and Travis's affidavit, which set forth "[t]he grounds for search and the basis for probable cause." The command portions of both warrants were also identical, authorizing police to do, among other things, the following (emphasis added):

> Enter, and search *the residence, chattels, and, out buildings on the curtilage* as completely described above;
>
> Search the person of Reginald Auther [sic] McClure . . ., *and other person/s found in or upon said premises who may be participating in*

*violations of the statutes* before cited, and who may be concealing evidence, paraphernalia, and/or Controlled Dangerous Substances;

Open and search any safes, boxes, bags luggage, compartments, or things in the nature thereof, *found in or upon said residence, chattels* and, which may contain controlled dangerous substances and paraphernalia.

Seize all controlled substances, paraphernalia, papers, receipts, or other evidence relating to the crime of possession, distribution of controlled dangerous substances, *found in or upon said vehicle, and chattels* and or found in close proximity. . . .

*The seizures and searches at issue*

The task force executed the warrants on September 18, 2018, the day after they were issued. That evening, Travis and other officers waited outside McClure's apartment, tracking his car by GPS as it made another quick trip to New York City and back to Elkton. When McClure's car pulled onto Spanish Bay Court and parked on the street in front of McClure's home, police vehicles pinned the Infiniti against the curb and the officers initiated what Travis later called a "traffic stop." As Travis approached the car, he would later testify, he saw Eusebio, theretofore unknown to Travis and the other officers, sitting in the front passenger seat, fidgeting with his hands "inside his waistband" and "in his groin area." The officers ordered both McClure and Eusebio out of the car. When the men did not exit the car on the their own, the officers forcibly removed them. As they removed Eusebio, two bags of marijuana fell from his pants to the ground. Police then searched the car and the persons of both McClure and Eusebio. Those searches revealed, among other things, 61.1 grams of suspected cocaine hidden in McClure's clothing and 50.2 grams of suspected heroin secreted in the groin area of Eusebio's pants. Both men were then arrested.

*The motion to suppress*

Eusebio was charged with six counts of related drug offenses. He moved to suppress the heroin evidence found during the search of his person, and a hearing on the motion was held in the Circuit Court for Cecil County. At the suppression hearing, Eusebio's counsel made it clear that he was not challenging whether the officers had probable cause sufficient to secure a warrant to search McClure's home, car or person. His challenge, he said, was to the scope of "the actual search warrants themselves." He made two arguments:

First, counsel argued, "there's actually nothing [in the warrants] that says you are authorized to search the vehicle." Counsel told the court that although he believed Travis had "intended to get two separate warrants, one for the vehicle, one for the residence," the language of the warrants, which counsel said authorized the police "to search the premises, chattels, property, curtilage thereon," did not actually authorize a search of McClure's car because it was not "on the premises" described in the warrants. Without this authorization and without a separate traffic violation, counsel argued, "[t]here was no grounds to do an initial stop."

Second, counsel asserted that, even if the warrants authorized the search of McClure's car, police lacked the factual "nexus" needed to lawfully search Eusebio under the warrant. According to counsel, because there was no probable cause to search the additional people present, the provision in the warrant commanding the search of "other persons found in or upon said premises who may be participating in violations of the statutes" made the warrant an impermissible general warrant. Under the facts of the case, counsel argued, there was

not enough of a link between Eusebio and the criminal activity being investigated to permit a search of Eusebio under the warrant.

In response, the prosecutor argued that, although the command portion of the warrant used the word "premises," the warrant for the search of the Infiniti undoubtedly was issued to authorize a search of McClure's car and the court should not be "fooled by this one word difference . . . when there are clearly two [warrants] for two different locations." The prosecution also argued that with a warrant to search the car and its occupants, the police "d[id] not need probable cause to do anything with anybody in that car." With the warrant, the prosecutor said, the police could

> search any other persons who may, the word is "may," be participating in violations of the statute before cited and who may be concealing evidence, paraphernalia and/or controlled dangerous substances. Probable cause has nothing to do with this. They have a warrant, any person may be concealing those items, it could be a baby, it could be a box, it could be Mr. Eusebio, and at that point they legally, based on this warrant, have the right to search him.[4]

Although the prosecutor argued that probable cause was not required to search Eusebio, she also argued that there was enough of a nexus between Eusebio and the crimes investigated under the warrant to authorize the search of his person.

The only witness at the hearing was Detective Travis. When asked by defense counsel on what basis he searched Eusebio, Travis said there were "several reasons." He explained that he searched Eusebio "because he was in the vehicle, because he had marijuana that fell . . . off of his person." He also said that he searched Eusebio "because when [he]

---

[4] Unsurprisingly, the State does not endorse the prosecutor's position on appeal.

approached the vehicle Mr. Eusebio had his hands inside his waistband, so I also wanted to be sure that Mr. Eusebio wasn't armed." When confronted by defense counsel about his statement in the post-arrest memorandum that "the Infiniti search warrant included other persons found in or upon the vehicle," Travis explained that he thought the "premises" language in the warrant would include the vehicle: "[Y]ou could argue premises is a vehicle, it's a building, it's an outhouse, whatever it is. A premises to me is semantics. I believe premises is the same as the vehicle. I mean, we know what we were trying to search here is the vehicle." On cross-examination by the prosecution, Travis said it was his intention to search "[w]hoever was in the vehicle" when he approached McClure's car.

The suppression court denied Eusebio's motion to suppress. The court first noted that although the case would have been "20 times easier" had the warrant used the word "vehicle" instead of "premises," the court believed "the intent of the warrant was for the car. . . . because there's specifically two separate warrants, the one titled with the home and the one titled with the car." In context, the court said, the warrant's language was sufficiently precise to provide for the stop and search of McClure's car. With respect to the subsequent search of Eusebio, the court explained that it believed the marijuana that fell from Eusebio's person could have provided independent grounds for searching Eusebio without any warrant, but that the drug evidence also established "more of an obvious connection" to McClure and the criminal activity that was the subject of the warrant. Accordingly, the court decided, the language commanding the search of "other person/s found in or upon said premises who may be participating in violations of the statutes before cited" provided the authority for Eusebio's search.

After the circuit court denied his motion to suppress, Eusebio entered a conditional plea of guilty to one count of possession with intent to distribute. On appeal, he challenges the result of the suppression hearing.

**Analysis**

To support his contention that the circuit court erred in denying his motion to suppress, Eusebio makes more detailed versions of the arguments that he raised at the suppression hearing.

Eusebio's first group of contentions focus on what he asserts are defects in the warrant. He contends that the warrant purportedly authorizing the search of McClure's car was defective because it did not define with particularity the scope of the search authorized. At the same time, he argues that the warrant was specific and the police executing it exceeded its scope.

Second, Eusebio contends, because the warrant did not authorize the search of McClure's car, the seizure of Eusebio—that is, the stop of McClure's car—was unlawful absent probable cause of "any sort of traffic offense." In what appears to be an alternative argument on this point, Eusebio further contends that the warrant at issue authorized only *searches*, not "stop[ping] or seiz[ing] the vehicle or its passengers."

Third, Eusebio asserts that even if the warrant were not defective on its face, the police lacked the probable cause necessary to subject Eusebio to a search under the provisions of the warrant, which purported to authorize the search of McClure "and other person/s found in or upon said premises who may be participating in violations of the statutes before cited,

- 9 -

and who may be concealing evidence paraphernalia, and/or Controlled Dangerous Substances."

The State's response differs from the position taken by the prosecutor at the suppression hearing. The State asserts that the warrant, given a commonsense reading, authorized the stop and search of McClure's car. And, the State argues, the police could lawfully detain Eusebio during the execution of this valid search warrant. It was during this lawful detention, the State says, that the police developed the probable cause necessary to arrest Eusebio and perform a search incident to this arrest. Because the initial seizure and subsequent arrest and search were lawful, the heroin discovered during the search incident to arrest should not have been suppressed.

The admissibility of the drug evidence depends on the legality of *each* seizure made and search performed when the police executed their warrants. Accordingly, our analysis is structured as follows: We will begin by outlining some basic principles of Fourth Amendment law. We will then apply those principles to evaluate the lawfulness of each seizure and search in the sequence that led police to the incriminating evidence Eusebio sought to suppress: the initial seizure of McClure and Eusebio, the additional intrusion of removing Eusebio from the car, and the subsequent search of Eusebio's person. This analysis leads us to conclude that the search and the preceding seizures were lawful.

### 1. The standard of review

When Maryland appellate courts consider a circuit court's denial of a motion to suppress evidence, their review is "limited to the record developed at the suppression hearing." *Moats v. State*, 455 Md. 682, 694 (2017). That record must be assessed "in the

light most favorable to the party who prevails on the issue that the defendant raises in the motion to suppress." *Norman v. State*, 452 Md. 373, 386 (2017). As the Court of Appeals has recently explained in *Pacheco v. State*, 465 Md. 311 (2019),

> We accept the trial court's factual findings unless they are clearly erroneous, but we review *de novo* the court's application of the law to its findings of fact. When a party raises a constitutional challenge to a search or seizure, this Court renders an independent constitutional evaluation by reviewing the relevant law and applying it to the unique facts and circumstances of the case.

*Id.* at 319–20 (cleaned up).

### 2. The warrant "preference" in search-and-seizure law

The Fourth Amendment to the Constitution, made applicable to the states via the Fourteenth Amendment, protects against "unreasonable" searches and seizures. U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause, supported by Oath and Affirmation, and

particularly describing the place to be searched, and the person or things to be seized.").[5]

On its face, the amendment's text commands only that searches and seizures be reasonable; no absolute warrant requirement is imposed. *See California v. Acevedo*, 500 U.S. 565, 587 (1991) (Scalia, J., concurring) ("The Fourth Amendment does not by its terms require a prior warrant for searches and seizures; it merely prohibits searches and seizures that are 'unreasonable.'"). Nevertheless, courts interpreting the Fourth Amendment have found in the text a "strong preference" for warrants. *Stevenson v. State*, 455 Md. 709, 723 (2017) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)); *see also Kentucky v. King*, 563 U.S. 452, 459 (2011) ("Although the text of the Fourth Amendment does not specify when a search warrant must be obtained, this Court has inferred that a warrant must generally be secured."). Subject to a (somewhat) finite list of exceptions, some of which we discuss below, searches and seizures conducted without a warrant are presumed unreasonable. *Grant v. State*, 449 Md. 1, 17 (2016) (citing *Katz v. United States*,

---

[5] Article 26 of the Maryland Declaration of Rights states:

> That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted.

Eusebio's challenges to the searches and seizures at issue are premised solely upon alleged violations of the federal Constitution, and he does not assert a violation of Article 26. This does not matter for purposes of our analysis, which relies on Supreme Court precedent and Maryland cases alike. This is because, although the language of the Maryland constitutional provision differs from that of the Fourth Amendment, "[t]he Court of Appeals of Maryland has made it abundantly clear that it regards Article 26 as providing an identical protection to that afforded by the Fourth Amendment." Dan Friedman, *The Maryland State Constitution: A Reference Guide* 36 (2006) (footnote omitted).

389 U.S. 347, 356–57 (1967); *Belote v. State*, 411 Md. 104, 112 (2009)). And in warrantless-search and -seizure cases, it is the state who bears the burden of overcoming that presumption. *Id.* (citing *Southern v. State*, 371 Md. 93, 105 (2002)).

The law surrounding the Fourth Amendment incentivizes police to abide by the general warrant rule, principally by imposing a heavy cost on unlawful searches and seizures. When a search or a seizure is unreasonable—when the search is made without a valid warrant and no exception to the general rule applies—the evidence it yields is subject to suppression under the Fourth Amendment exclusionary rule. *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961) ("[A]ll evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court."); *Carter v. State*, 243 Md. App. 212, 226–27 (2019) ("The exclusion of evidence obtained in violation of these provisions is essential to the Fourth Amendment."). In cases in which various searches and seizures are challenged, the exclusionary rule reaches beyond "evidence found as a *direct* result of unconstitutional conduct." *Thornton v. State*, 465 Md. 122, 150 (2019) (emphasis added). It also bars the admission of any "'fruit of the poisonous tree,' meaning any evidence 'discovered and found to be *derivative* of an illegality.'" *Id.* (quoting *Utah v. Strieff*, 579 U.S. ___, 136 S. Ct. 2056, 2061 (2016)) (emphasis added).

There are other incentives for police to get a warrant. For example, when police search or seize without a warrant, the state bears the burden of proving the lawfulness of the intrusion. But when police have a warrant, that warrant is presumed valid, which essentially shifts to the criminal defendant the burden of proving the unlawfulness of the search. *Wood v. State*, 196 Md. App. 146, 164 (2010). When the defendant challenges the pre-search or

-seizure determination of probable cause by the warrant-issuing judge, that determination will receive "great deference" in a suppression hearing. *Carter v. State*, 178 Md. App. 400, 408 (2008) (cleaned up). Even if it is doubtful that a substantial basis existed, a search under a warrant still "may be sustainable where without one it would fail." *United States v. Ventresca*, 380 U.S. 102, 106 (1965). Finally, if a reviewing court determines that probable cause was lacking and a warrant should not have been issued, the good-faith exception to the exclusionary rule may step in to shield the unlawfully obtained evidence from suppression. *See*, *e.g.*, *United States v. Leon*, 468 U.S. 897, 926 (1984); *Stevenson*, 455 Md. at 728–29.

The state receives this favorable judicial treatment in a suppression hearing only if the warrant authorizing the challenged search or seizure meets the requirements spelled out in the text of the Fourth Amendment itself: Warrants must be issued "upon probable cause," which must be supported by "Oath and Affirmation." U.S. Const. amend. IV. To effectively cabin police discretion, *see United States v. Dargan*, 738 F.3d 643, 647 (4th Cir. 2013), warrants must also "particularly describ[e] the place to be searched, and the person or things to be seized." U.S. Const. amend. IV. The Supreme Court has also made it clear that, in addition to meeting these textual requirements, a warrant must be issued by a "neutral and detached magistrate." *Johnson v. United States*, 333 U.S. 10, 14 (1948).

In this case, Eusebio's challenges to the validity of the warrant strike at two of the requirements explicit in the Fourth Amendment: probable cause and particularity.

### 3. The initial seizure

As we mentioned above, under the fruit-of-the-poisonous-tree doctrine, even evidence resulting from a lawful search or seizure may still be subject to exclusion if the search or seizure was made possible only by some antecedent unlawful intrusion. Accordingly, it is critical that courts ruling on the suppression of evidence—or deciding an appeal arising out of a court's denial of a motion to suppress—evaluate the lawfulness of each search and seizure that led to the evidence sought to be suppressed. We begin with the first link in the chain that led police to the heroin evidence discovered on Eusebio's person: the seizure of the car and the two men inside it.

When the police surrounded McClure's parked car, both McClure and Eusebio were seized within the meaning of the Fourth Amendment. *See Brendlin v. California*, 551 U.S. 249, 257 (2007) (holding that a passenger in a car subjected to a traffic stop is seized as much as driver and may therefore challenge the lawfulness of the stop). As we explained above, this seizure, to be reasonable under the Fourth Amendment, must have been either authorized by warrant or allowable under some exception to the warrant clause.

The State argues that the seizure of McClure's car and anyone inside it was authorized by the warrant to search the car. Eusebio disagrees. He first asserts that the warrant purportedly authorizing the search of McClure's car was invalid on particularity grounds— that it failed to "describe[] with sufficient particularity the persons, places and things to be searched." At the same time, he argues the warrant provided a specific scope unlawfully exceeded by police: "Nowhere in the body of the warrant does it give authorization to

conduct a search of the vehicle or the persons therein."[6] Without authorization under the warrant and without probable cause of a traffic violation, Eusebio argues, the stop of McClure's vehicle was unlawful. Alternatively, Eusebio argues that even if the warrant authorized a search of the car, it did not specifically authorize "stop[ping] or seiz[ing] the vehicle or its passengers," making the seizure of the car and its occupants unlawful.

We disagree with Eusebio on all fronts. With respect to Eusebio's particularity challenge, we hold that the warrant was not impermissibly general, because it specifically described McClure's car and authorized its search. Eusebio's argument that the officers executing the warrant exceeded its scope is similarly unavailing. The warrant did not restrict officers to a search of the car only if it was found within the curtilage of McClure's apartment building. And finally, with respect to Eusebio's challenge to the officers' authority to seize the car under a warrant for its search, we hold police with a warrant to search a car may seize the car to conduct their search without offending the Fourth Amendment's bar on unreasonable searches and seizures.

*a. The warrant specifically authorized the search of McClure's car and was not impermissibly "general."*

For a warrant to comport with the particularity requirement of the Fourth Amendment, it must "particularly describ[e] the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. As the Supreme Court explained in *Maryland v. Garrison*,

---

[6] We address whether the warrant authorized the search of the persons in the vehicle in part 5 of our analysis, in which we evaluate the lawfulness of the search of Eusebio's person.

480 U.S. 79 (1987), the particularity requirement prevents "general searches" by limiting

the authorization to search "to the specific areas and things for which there is probable

cause to search." *Id.* at 84. In this way,

> the scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase.

*Id.* at 84–85 (cleaned up). Additionally, the description of the limited places to be searched

must be "definite enough to prevent any unauthorized and unnecessary invasion" of

privacy rights. *Moats v. State*, 455 Md. 682, 708 (2017) (Adkins, J., concurring) (quoting

*Saunders v. State*, 199 Md. 568, 572 (1952)). The description must be "such that the officer

with a search warrant can, with reasonable effort ascertain and identify the place intended."

*Steele v. United States*, 267 U.S. 498, 503 (1925). These related requirements—limitedness

and definiteness—ensure that a warranted search is "carefully tailored to its justifications"

and cannot lawfully devolve into "the wide-ranging exploratory searches the Framers

intended to prohibit." *Garrison*, 480 U.S. at 84.[7]

---

[7] Our formulation of these concepts owes much to Professor Wayne R. LaFave's explanation of the particularity requirement in his *Search & Seizure* treatise. There, he explains that particularity is made of two components: "*focusing*" (like definiteness, describing the place to be searched in such a way that "minimize[s] the risk that officers executing search warrants will by mistake search a place other than the place intended by the magistrate") and *probable cause* (like limitedness, ensuring that a search is limited only to the particular places for which a magistrate finds there is probable cause to believe incriminating evidence will be found). 2 Wayne R. LaFave, *Search & Seizure* §§ 4.5, 4.5(d) (5th ed. 2019) (emphasis added).

Undoubtedly, the warrant in this case satisfies the definiteness requirement because it both particularly described McClure's car and authorized its search. The caption of the warrant described the car by make, color, model year, VIN and Maryland license-plate number, which is more than sufficient to enable the officers executing the warrant to identify with certainty the car to be searched. *Cf. Griffith v. State*, 59 N.E.3d 947, 958 (Ind. 2016) (warrant specifically describing van's color, VIN, and plate number was not impermissibly "general"); *Baird v. Commonwealth*, 273 S.W.2d 44, 44 (Ky. 1954) (description in affidavit of "Buick sedan, 1951, maroon body and light top," plus "motor number and license tag number," was sufficient); *State v. Brown*, 412 So.2d 1064, 1064–65 (La. 1982) (warrant that incorporated affidavit describing vehicle by make, model, color, VIN and plate number met particularity requirement); *State v. Miller*, 429 N.W.2d 26, 33 (S.D. 1988) (warrant affidavit's description of an automobile's make and operator was sufficiently particular, even though the police were mistaken as to who actually owned the car). Detective Travis and the other officers executing the warrant could not reasonably have identified some other car as the proper subject of their search.

The warrant's terms do not offend the limitedness component of the particularity requirement either. It is true that the warrant's terms purport to authorize searches beyond that of the car described in the warrant's caption, that is, the residence and "out buildings on the curtilage" just mentioned. But even with this language—superfluous because of the separate warrant issued for the search of McClure's apartment—the scope of the warrant remained limited "to the specific areas and things for which there is probable cause to search." *Garrison*, 480 U.S. at 84. The language would not allow a legitimate search of

- 18 -

McClure's car to "degenerate into a fishing expedition or a general 'rummaging about.'" *Feaster v. State*, 206 Md. App. 202, 228 (2012). Although the command portion of the warrant for McClure's car may have reached further than was intended by the detective who drafted the warrant or the judge who signed it, the Fourth Amendment particularity requirement is not a bar on warrants for the search of two or more places, as long as probable cause exists for each one independently. *Asner v. State*, 193 Md. 68, 77 (1949) ("[A] separate warrant for each suspected place to be searched is not called for either by the letter or the spirit of the constitution, nor requisite for the protection of the public peace, or individual security. To require it would occasion useless delay and expense, and tend to defeat the salutary objects of the law." (quoting *Gray v. Davis*, 27 Conn. 447, 455 (Conn. 1858))).

> *b. The police did not exceed the particular scope of the warrant, even though McClure's car was not within the curtilage of his apartment when it was stopped.*

When police execute a search warrant, the Fourth Amendment confines them "strictly within the bounds set by the warrant." *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 394 n.7 (1971) (citing *Marron v. United States*, 275 U.S. 192, 196 (1927)). But in determining where those boundaries lie, we read the language of warrants in context and with the understanding that, although they are legal documents, warrants are "drafted by police officers, in the usual course of their work, not by legal linguists." *Walls v. State*, 179 Md. App. 234, 248 (2008); *see also Groh v. Ramirez*, 540 U.S. 551, 557–58 (2004) (suggesting courts may construe warrants "with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation,

and if the supporting document accompanies the warrant"); *Wood v. State*, 196 Md. App. 146 (2010) (same). We do not read warrants "hypertechnically." *Walls*, 179 Md. App. at 248. As the Fourth Circuit has aptly explained, warrants are meant to preclude officers from "conducting fishing expeditions into the private affairs of others," but they are not intended to impose a "constitutional strait jacket" on police. *United States v. Dargan*, 738 F.3d 643, 647 (4th Cir. 2013) (cleaned up).

The first clause of the command portion of the warrant at issue here directed the officers to "[e]nter, and search the residence, *chattels*, and, outbuildings on the curtilage *as completely described above*." (Emphasis added.) We decline Eusebio's invitation to read this clause as authorizing the search of McClure's car—a chattel—only if it had been "on the curtilage." Applying the "on the curtilage" modifier to all items in the list of places to be searched makes no sense when the warrant is read together with the affidavit affirming the state's probable cause to search. The majority of that affidavit describes McClure's car as it travels around Elkton and to and from New York and Philadelphia. The police suspected that McClure was using his car to transport and sell drugs. We have no reason to believe the judge who signed the warrant found there was probable cause that McClure's car would contain contraband or evidence of the suspected drug offenses *only if* it were parked in the private driveway adjoining his residence or elsewhere on the apartment's curtilage.

In effect, we read the clause at issue no differently than if it commanded the police to enter and search "the above-described residence, out buildings on the curtilage, and chattels." Because McClure's car was the only "above-described" chattel mentioned in the

warrant, police could search it, even on a public road, without exceeding the warrant's scope.

### *c. With a valid warrant to search McClure's car, the police could lawfully seize the car, its driver and passengers like Eusebio.*

Eusebio contends that even if the warrant for McClure's car can be read to authorize the *search* of the car, it contains no language expressly permitting officers to *seize* the car to effect the search. This omission, he says, renders the seizure of the car unlawful. We are not convinced by this argument.

We have found no case explicitly holding that police may seize a car to execute a warrant to search the same, even if the warrant does not expressly provide for seizure. We are nevertheless confident that such a seizure incidental to a duly authorized search is lawful. This is because the "ultimate touchstone" of the Fourth Amendment is "reasonableness," *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006), which depends on a balancing of, "on the one hand, the degree to which [a search or seizure] intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests," *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999); *see also Atwater v. City of Lago Vista*, 532 U.S. 318, 360–61 (2001) (O'Connor, J., dissenting); *Maryland v. Wilson*, 519 U.S. 408, 411 (1997); *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989); *Terry v. Ohio*, 392 U.S. 1, 21–24 (1963). As we explained above, the balance is usually struck "in favor of the procedures described by the Warrant Clause." *Skinner*, 489 U.S. at 619; *see also Michigan v. Summers*, 452 U.S. 692, 700 (1981) ("[T]he general rule [is] that every arrest, and every seizure having the

essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause."); *State v. Johnson*, 458 Md. 519, 533 (2018) ("Reasonableness within the meaning of the Fourth Amendment generally requires the obtaining of a judicial warrant." (cleaned up)). But the balancing of these interests may also support searches and seizures without a warrant, probable cause or both. *See, e.g.*, *Kentucky v. King*, 563 U.S. 452, 460 (2011) (exigent circumstances, with probable cause but without a warrant); *California v. Acevedo*, 500 U.S. 565, 580 (1991) (automobile searches, with probable cause but without a warrant); *Almeida-Sanchez v. United States*, 413 U.S. 266 (1973) (border searches, without probable cause and without a warrant); *Chimel v. California*, 395 U.S. 752, 762–63 (1969) (searches incident to arrest, without separate justification and without a warrant); *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 534, 538 (1967) (administrative searches, with a warrant but without probable cause); *Terry v. Ohio*, 392 U.S. 1, 27 (1963) (investigative stops and frisks, with reasonable suspicion of criminal activity but without a warrant).

It is beyond cavil that, under this Fourth Amendment balancing, a warrantless seizure of a car to facilitate the warranted search of the same is reasonable. The state's need to seize a car to perform a warranted search of it is obvious, as police cannot search a car in motion. *Cf. Griffin v. State*, 232 Md. 389, 396 (1963) ("We know of no practical method of executing [a warrant's command to search] other than by arresting the person to be searched."). The power to search a car means little if police, armed with a warrant, are nonetheless powerless to stop a driver from taking the car down the road or across state

lines.[8] On the other hand, because police have already gotten a warrant to search the car, its owner's privacy interests have been sufficiently protected by the Fourth Amendment. And the effect of the seizure on the driver's liberty interests is *de minimis*, as he or she is precluded from using the car only for the duration of the search. When police necessarily seize a car to search it, they effect an intrusion on the rights of the owner no greater than the intrusion on the rights of a homeowner whose house is searched under a warrant. We note too that police armed with a warrant to search a car have already gone through the procedures spelled out in the Warrant Clause, establishing probable cause to the satisfaction of a neutral and detached magistrate. *Cf. Griffin*, 232 Md. at 396 ("As the search warrant itself must be founded upon probable cause, we do not think that conditional arrest for the purpose of executing the warrant is illegal or unreasonable."). We cannot fathom what additional showing police would need to make to have the judge include an express authorization to stop a car to execute the search warrant, should someone happen to be behind the wheel when police attempt to search it.

Moreover, the proposition that police may lawfully seize a car to execute a warrant to search the same is contained entirely within existing exceptions to the general warrant preference. With only "reasonable suspicion to believe that criminal activity may be afoot," police may stop a car. *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (cleaned up). This reasonable-suspicion threshold is less exacting than the probable-cause standard, *see id.* at

---

[8] McClure's car was only about 1,000 feet from the Maryland–Delaware line when it was stopped by the police executing the search warrant.

274 (explaining that for police to have reasonable suspicion, "the likelihood of criminal activity need not rise to the level required for probable cause"), and will be met in every case in which police have already gotten a warrant to search whatever they now seek to seize. Additionally, with "probable cause to believe contraband or evidence is contained" in a car, police may stop a car and search it. *Acevedo*, 500 U.S. at 580 (citing *Carroll v. United States*, 267 U.S. 132, 155–56 (1925)); *Almeida-Sanchez v. United States*, 413 U.S. 266, 269 (1973) ("It is well settled, of course, that a stop and search of a moving automobile can be made without a warrant."). Police with a warrant to search a car have already established the probable cause required for this automobile exception to the warrant rule to apply.

### 4. The "incremental intrusion" of removing Eusebio from the car

After the initial seizure of McClure's car and its occupants, police forcibly removed Eusebio from it. This "incremental intrusion," *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977), was a distinct seizure whose lawfulness must also be determined. If this second seizure were not reasonable within the meaning of the Fourth Amendment, its fruits, direct or derivative, could be subject to suppression.

In his brief, Eusebio does not argue that police could not order him out of the car if they could lawfully stop the car and search it. In any event, there is no reason to doubt the constitutionality of this seizure. The Supreme Court has affirmed the lawfulness of ordering occupants out of vehicles stopped by police. *See Maryland v. Wilson*, 519 U.S. 408, 415 (1997) (holding that "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop"); *Pennsylvania v. Mimms*, 434 U.S. 106 (1977)

- 24 -

(holding that, as a matter of course, police may order a driver out of a vehicle lawfully detained for a traffic violation). Additionally, the Court has held that the Fourth Amendment is not violated when police temporarily detain the occupants of a home subject to search. *Michigan v. Summers*, 452 U.S. 692, 696, 703, 705 (1981) (holding that a search warrant "implicitly carries with it the limited authority to detain" individuals occupying the premises to be searched while the search is conducted, even though this detention is "unsupported by probable cause" to seize); *cf. Cotton v. State*, 386 Md. 249, 258 (2005) (holding that people found "in or about" premises to be searched may be temporarily detained during that search); *Fields v. State*, 203 Md. App. 132, 141 (2012) ("[W]hen executing a search warrant, police officers may reasonably detain persons found in and about the premises for reasons of safety and to secure the premises being searched.").

The rationale underscoring these decisions—that an overriding concern for officer safety outweighs the relatively minor additional or incremental intrusion on the person removed from the car or detained pending search—applies with equal force to vehicle searches. *See Michigan v. Long*, 463 U.S. 1032, 1047–48 (1983) ("[I]nvestigative detentions involving suspects in vehicles are especially fraught with danger to police officers."); *Michigan v. Summers*, 452 U.S. 692, 702–03 (1981) (explaining that risk of harm to police and people detained while executing search warrant "is minimized if the officers routinely exercise unquestioned command of the situation").

Because they had a warrant to search McClure's vehicle, the police could, without violating the Fourth Amendment, order the occupants out of that vehicle—or remove them, if necessary—to perform their search.

5. The search of Eusebio's person

The final link in the chain of challenged seizures and searches was the search of Eusebio's person, performed after the police removed him from the car and two baggies of marijuana fell from his waist, but before he was arrested.

Although he frames his appellate arguments in different terms, Eusebio effectively makes two challenges to the lawfulness of the search of his person. First, mixed with his argument that the car must have been "on the curtilage" to be subject to search under the warrant, he argues that to be "in or upon the premises" and thus subject to search, McClure and Eusebio must have been on the property at 3504 Spanish Bay Court. Because Eusebio was stopped on a public road when the police took him out of McClure's car to search him, he argues, his search was not covered by the warrant. Second, he argues that even if the warrant authorized the search of McClure and others in the car, police lacked the probable cause needed to search Eusebio under this provision.

For its part, the State suggests on appeal that the search of Eusebio's person was a permissible search incident to arrest.

We agree with the State.

### a. The search of Eusebio's person fell outside the scope of the warrant authorizing the search of McClure and his car.

Eusebio argues that by searching his person, the officers exceeded the particular scope drawn by the warrant, which limited police to searches of McClure and others "found in or upon [the] premises who may be participating in violations of the statutes before cited, and who may be concealing evidence, paraphernalia, and/or Controlled Dangerous

Substances." Because Eusebio was found by police in a car parked on a public road and not within the curtilage of McClure's apartment, he argues that he was not on the "premises" and therefore could not be a subject of the warrant.

Eusebio's argument is not convincing; the result of this case does not turn on the meaning of the word "premises."[9] The warrant did not authorize a search of Eusebio's person, regardless of where he was standing, because the warrant-issuing judge never made a probable-cause determination with respect to Eusebio. It is for that reason the search of his person necessarily lay beyond the warrant's scope.

To reach this conclusion, we must bring into focus a line blurred in Eusebio's argument in the suppression hearing, in which his counsel told the court that "[t]he case law as it's evolved to date allows . . . [warrants] to search anybody on the premises that may be involved in the criminal activity," but that "there has to be some nexus to get to Mr. Eusebio."

There are in fact two species of warrant provisions that purport to authorize police to search persons present when a search warrant is executed, without identifying the persons

---

[9] Even if this case did turn on the proper construction of "premises," we still would not be convinced. Eusebio is correct that the word "premises" is typically used to refer to "a tract of land with its buildings and grounds." *Walls v. State*, 179 Md. App. 234, 248 (2008). But as we discussed above, in locating the precise boundaries that a warrant places on the searches it authorizes, we read its language in context and with the understanding that it is often drafted by police officers, not lexicographers.

We think that in context, immediately following a list subjecting to search McClure's residence, outbuildings and his car, the word "premises" could reasonably have been interpreted more broadly than its literal definition, to cover all the places subject to search—just as it was by the executing officer and the circuit court.

subject to search by name. The first—what we will call *all-persons-present* provisions—authorize the search of all persons present at some site certain when the warrant is executed. The second—what we will call *all-present-participants* provisions—command the search of all persons present who may be participating in the criminal conduct investigated, or who may be concealing evidence thereof.

These provisions may at first blush appear impermissibly "general," failing to "sufficiently specify the place or person to be searched," *Frey v. State*, 3 Md. App. 38, 46 (1968). But they do not offend the Fourth Amendment. That is because, properly understood, the provisions do not authorize "random or blanket search[es] in the discretion of the police." *Id.* Nonetheless, they differ in their legal import.

Maryland's appellate jurisprudence regarding all-persons-present warrants appears to be limited to dicta in one case: *Sutton v. State*, 128 Md. App. 308 (1999). In it, we explained that a warrant to search all persons found at some place is not impermissibly general if "the information supplied the magistrate supports the conclusion that it is probable anyone in the described place when the warrant is executed is involved in the criminal activity in such a way as to have evidence thereof on his person." *Id.* at 322 (quoting 2 Wayne R. LaFave, *Search & Seizure* § 4.5(e) (3d ed. 1996)). When there is "good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant, presence becomes the descriptive fact satisfying the aim of the Fourth Amendment." *Id.* at 321 (quoting *State v. De Simone*, 288 A.2d 849, 850 (N.J. 1972)). In short, the all-persons-present warrant withstands constitutional scrutiny because the judge who issues it makes a probable-cause determination for all persons subject to search, even if they are identifiable

only "by physical nexus to the on-going criminal event itself." *Id.* (quoting *De Simone*, 288 A.2d at 850).[10] *Sutton* reflects the majority rule with respect to all-persons-present warrants. *See United States v. Guadarrama*, 128 F. Supp. 2d 1202, 1208 & n.7 (E.D. Wis. 2001) (surveying state and federal appellate decisions considering all-persons-present warrants). And the majority rule seems to us, as it does to Professor LaFave, "[u]nquestionably . . . correct." 2 Wayne R. LaFave, *Search & Seizure* § 4.5(e) (5th ed. 2019).

The import of an *all-present-participants* warrant—commanding the search of unnamed persons present who *may be* participating in the investigated criminal activity or who *may be* concealing evidence of the crime—is quite different. A judge who issues an all-present-participants warrant does not determine that all persons in the place subject to search are likely to be involved in the criminal activity investigated and may thus be

---

[10] Of course, as the New Jersey court pointed out in *De Simone*, the validity of an all-persons-present warrant will "depend upon the facts." 288 A.2d at 850. Depending on the crime being investigated or the nature of the place to be searched, physical presence upon execution of a warrant will not always be enough to satisfy the Fourth Amendment particularity requirement. For example,

> [a] showing that lottery slips are sold in a department store or an industrial plant obviously would not justify a warrant to search every person on the premises, for there would be no probable cause to believe that everyone there was participating in the illegal operation. On the other hand, a showing that a dice game is operated in a manhole or in a barn should suffice, for the reason that the place is so limited and the illegal operation so overt that it is likely that everyone present is a party to the offense. Such a setting furnishes not only probable cause but also a designation of the persons to be searched which functionally is as precise as a dimensional portrait of them.

*Id.*

searched. Rather, as Professor LaFave explains, the warrant-issuing judge "[leaves] *to the executing officers* the problem of selecting the persons to be searched on the basis of the information they then may have" while executing the warrant. *Id.* at § 4.5(e) (emphasis added). In effect, when a judge signs an all-present-participants warrant, she tells the police that they may search a person unknown at the time the warrant is issued if *the police*, upon execution of the warrant, determine there is probable cause to do so.

That the judge shifts the probable-cause determination to the officers executing the warrant will not cause an all-present-participants warrant to run afoul of the Fourth Amendment. As Professor LaFave explains, quoting a decision from our Court of Appeals, these provisions "are no more than a directive to the police to perform duties that they should perform in the absence of any command in the warrant to that effect." *Id.* (quoting *Griffin v. State*, 232 Md. 389, 393 (1963)). All-present-participants provisions remind officers that they have the power to make warrantless arrests and perform warrantless searches incident thereto, provided they have the requisite probable cause. *Griffin*, 232 Md. at 393.

But the reason all-present-participants provisions are inoffensive is because they are inoperative. They do not transfer to the executing officers any authority *under the warrant* to search unnamed present participants. This is because, as the text of the Fourth Amendment leaves beyond doubt, a judicial determination of probable cause is indispensable to the issuance of a valid warrant. And because all-present-participants provisions leave it *to the officers* to decide who is subject to search, based on the information they possess upon execution of the warrant, personal searches made after an

all-present-participants warrant is issued "cannot be upheld on the ground that they were based upon a prior probable cause determination by a magistrate." 2 Wayne R. LaFave, *Search & Seizure* § 4.5(e) (5th ed. 2019); *cf. Commonwealth v. Lindsay*, 595 A.2d 86, 88 (Pa. 1999) (holding that search cannot be upheld on the basis of warrant to search persons "engaged in the concealment or destruction of evidence" because such a warrant is issued "prior to the actual existence of probable cause"). Police armed with an all-present-participants warrant therefore must identify some other grounds for upholding the search of someone not named in the warrant.

This conclusion, not yet made explicit in our case law, is undoubtedly correct. If an all-present-participants provision could authorize the search of someone's person, we do not see how it would differ from the general warrants the Fourth Amendment is meant to protect against. *Cf. Henry v. United States*, 361 U.S. 98 (1959) ("The general warrant, in which the name of the person to be arrested was *left blank*, . . . perpetuated the oppressive practice of allowing the police to arrest and search on suspicion. Police control took the place of judicial control, since no showing of 'probable cause' before a magistrate was required." (emphasis added)).

Eusebio's assumption to the contrary—that our case law "allows . . . [warrants] to search anybody on the premises that may be involved in the criminal activity," provided police can later establish probable cause, or a factual "nexus," upon the warrant's execution—seems to stem from his reading of *DeAngelo v. State*, 199 Md. 48 (1952). That case, like the present one, also involved an all-present-participants warrant, authorizing the search of a man named Chickie and "all other persons who may be found participating" in

- 31 -

an illegal lottery operation. *Id.* at 49. DeAngelo walked into Chickie's home while police were executing the warrant. *Id.* at 50. When police showed him the warrant, purporting to authorize the search of anyone found participating in the lottery, DeAngelo told police he would fight them if they tried to search him. *Id.* DeAngelo was arrested and taken to the police station, where he was ultimately searched. *Id.*

*DeAngelo* does not explicitly address the effect of the all-present-participants warrant, and we think the case is more appropriately viewed as a search-incident-to-arrest case. In its analysis, the Court explained that "if a misdemeanor be committed in the presence of an officer who is charged with the enforcement of the law, he is authorized, without a warrant to arrest the offender," and "[a]s an incident of the arrest he is authorized to search the prisoner." *Id.* at 51. Because the arresting officer conceded DeAngelo was not violating any law in his presence, *id.*, "the arrest and search of [DeAngelo] were unlawful," *id.* at 53. The warrant commanding police to search "all other persons who may be found participating in said lottery" could not make the search lawful for the same reason: there was simply "nothing to show that appellant was participating in the lottery." *Id.* at 51. The *DeAngelo* Court, in effect, *assumes* that the warrant might have been a source of police authority to search all present participants, but it still concludes the search and arrest of DeAngelo were unlawful because there was nothing to show DeAngelo was a present participant. *See id.* at 53 ("[T]here were no reasonable grounds to believe, *assuming that would have been sufficient*, that the appellant was participating in a lottery." (emphasis added)).

In sum, a warrant's all-persons-present provision does not offend the Fourth Amendment because it particularly describes the people subject to search, using physical presence to identify them, instead of names, eye color or height. On the other hand, a warrant's all-present-participants provision is inoffensive because it is inoperative. Police who search someone on the basis of an all-present-participants provision may as well have no warrant at all; they must identify some other grounds to uphold the legality of the search.

In the present case, the warrant secured by Detective Travis authorized the search of McClure "and other person/s found in or upon said premises who may be participating in violations of the statutes before cited, and who may be concealing evidence, paraphernalia, and/or Controlled Dangerous Substances." This provision is of the all-present-participants stripe and thus could not by itself authorize the search of Eusebio.

### b. The search of Eusebio's person was a valid search incident to arrest.

Unfortunately for Eusebio, any apparent victory in establishing that the search of his person was beyond the scope of this warrant is a hollow one. Even a search that exceeds the scope of a warrant may be reasonable if it is supported by probable cause and fits within one of the recognized exceptions to the general warrant rule. *See Garcia-Perlera v. State*, 197 Md. App. 534, 554 (2011) (explaining that a medallion seized outside the scope of a warrant "was not legally seized unless it fell within one of the established exceptions to the warrant requirement"). The search of Eusebio's person was supported by probable cause of criminal activity and fit within one of the exceptions to the warrant rule: searches incident to a lawful arrest.

It is well-established that with probable cause to believe a person has committed a felony, or that he is committing a felony or misdemeanor in the presence of police, police may constitutionally arrest that person without a warrant. *Pacheco v. State*, 465 Md. 311, 322 (2019). Incident to that arrest and without any independent justification, police may perform a warrantless search of the arrestee's person. *Id.* at 324. While generally a search incident to a lawful arrest follows the arrest, "the precise sequence between the incidental search and the arrest is not of critical importance." *State v. Funkhouser*, 140 Md. 696, 731 (2001) (quoting *Anderson v. State*, 78 Md. App. 471, 480–81 (1989)); *see also Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980) ("Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa."); *Lee v. State*, 311 Md. 642, 668 (1988); *Spell v. State*, 239 Md. App. 495, 509 (2018); *Conboy v. State*, 155 Md. App. 353, 364 (2004). If the arrest and search are "essentially contemporaneous," *Ricks v. State*, 322 Md. 183, 191 (1991), and probable cause to arrest precedes the search, *Conboy*, 155 Md. at 364; *see also Sibron v. New York*, 392 U.S. 40, 77 (1968) (Harlan, J., concurring) ("[T]he fruits of a search may not be used to justify an arrest to which it is incident, but this means only that probable cause to arrest must precede the search."), then the search incident to arrest will survive constitutional scrutiny.

Probable cause to arrest exists where "the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Elliott v. State*, 417 Md. 413, 431 (2010)

(quoting *Longshore v. State*, 399 Md. 486, 501 (2007) (quotations and alterations omitted)).

As Judge Hollander explained in *State v. Cabral*, 159 Md. App. 354 (2004),

> Probable cause requires "less evidence for such belief than would justify conviction but more evidence than that which would arouse a mere suspicion." *Carroll v. State*, 335 Md. 723, 735 (1994). Moreover, it is assessed by considering "the totality of the circumstances in a given situation . . . ." *Collins v. State*, 322 Md. 675, 680 (1991).
>
> In determining whether a search [or seizure] was founded on probable cause, hyper-technical analysis, divorced from the realities of everyday life, is not required. *See Potts v. State*, 300 Md. 567, 573 (1984). As the Supreme Court explained in *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949): "In dealing with probable cause . . . , as the name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *See Illinois v. Gates*, 462 U.S. 213, 231 (1983) (reiterating that "the central teaching of [its] decisions bearing on the probable-cause standard is that it is a 'practical, nontechnical conception.'" (quoting *Brinegar*, 338 U.S. at 176)).

*Id.* at 374 (some citations omitted). The probable-cause standard is "incapable of precise definition or quantification into percentages," *Maryland v. Pringle*, 540 U.S. 366, 371 (2003), but "[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt," *Brinegar*, 338 U.S. at 175 (cleaned up). That belief of guilt "must be particularized with respect to the person to be searched or seized." *Pringle*, 540 U.S. at 371.

To argue that police lacked probable cause for Eusebio's arrest and search, Eusebio points us to *DeAngelo*, 199 Md. 48, discussed above. In that case, DeAngelo walked into another man's home while police were executing a warrant to search the place for evidence of an illegal lottery operation. *DeAngelo*, 199 Md. at 49–50. Police had never seen DeAngelo before, and they conceded he was not violating any law in their presence. *Id.* at

50. But when DeAngelo refused to consent to a search, police arrested him and took him to the police station, where a search of his person turned up "222 numbers, 7 slips, $41.52 in play, 2 slips containing 5 race horse bets and a $5 bill, wrapped in between them." *Id.*

The Court concluded that DeAngelo's arrest and search were unlawful because he was not violating any law in the officers' presence, and because police lacked probable cause of any such criminal conduct on his part: "[T]here were no reasonable grounds to believe . . . that [DeAngelo] was participating in a lottery, merely by entering a private dwelling where the only suspicious circumstance at that time was the presence of the lottery tickets in the house." *Id.* at 53.

Eusebio argues that police in the present case, as in *DeAngelo*, were "unable to articulate any facts that tended to implicate [Eusebio] in the . . . crimes" they were investigating. We do not agree. The facts known to the officers at the time they searched Eusebio's person provided the police with a "reasonable grounds" to believe that Eusebio was a participant in the criminal drug possession and distribution they were investigating. It is true that police did not know Eusebio before they pulled him out of McClure's car that night. And perhaps, in isolation, just seeing two marijuana baggies fall from Eusebio's waist would not have provided police with enough to establish probable cause of his

criminal conduct.[11] But this did not happen in isolation. At the time police pulled Eusebio

out of McClure's car and searched him, they knew McClure was returning from one of

McClure's many short trips to New York City—from an area Detective Travis described

as "a hot bed for drug distributors." As he approached the car, Detective Travis saw

Eusebio "fidgeting in his groin area." Detective Travis also testified in the suppression

hearing that over the course of his previous drug-crimes investigations, he had seen

"multiple people in a car holding or possessing controlled dangerous substances at the same

time." We believe that from all of this the officers who searched Eusebio could reasonably

conclude there was a fair probability Eusebio was involved in the drug crimes the police

were investigating. With this probable cause, they could arrest him and perform a search

incident thereto.

It does not matter that Eusebio was searched before he was arrested, because police

had probable cause to arrest him before they searched him and because the search and the

arrest were "essentially contemporaneous." *Ricks*, 322 Md. at 191. Nor does it matter that

---

[11] In ruling on the motion to suppress, the circuit court suggested that seeing marijuana fall from Eusebio's waist "create[d] an environment where he c[ould] be searched even independent of a nexus." As we understand it, the court was suggesting that the sight of the two baggies of marijuana alone might have provided probable cause to arrest and search Eusebio. This assertion is called into question by *Pacheco v. State*, 465 Md. 311 (2019). In that case, the Court of Appeals held that because marijuana possession is criminal only if a person has more than 10 grams of it, seeing someone with a single joint and smelling burning marijuana would not, without more, give officers probable cause to arrest. We need not decide whether seeing two baggies fall from a person's waist would be enough to establish probable cause to arrest and perform a search incident thereto. As we explain above, there were more facts that could have led officers to reasonably believe Eusebio was engaged in criminal activity.

the officer who searched Eusebio believed the authority to do this came from the warrant to search McClure's car or his fear that Eusebio might have been armed. *See Brigham City, Utah v. Stuart*, 547 U.S. 398, (2006) ("An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.'" (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978) (emphasis added in *Brigham City*)); *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause."); *Arkansas v. Sullivan*, 532 U.S. 769, 771–72 (2001) (reiterating the Court's "unwilling[ness] to entertain Fourth Amendment challenges based on the actual motivations of individual officers," and that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis") (quoting *Whren v. United States*, 517 U.S. 806, 813 (1996)).

## Conclusion

The seizures and subsequent search of Eusebio were not unlawful. His initial seizure was implicitly authorized by the warrant for the search of McClure's car. The "incremental intrusion" of removing him from the car while officers executed the warrant was certainly reasonable. And the search of Eusebio's person, though not actually authorized by the warrant to search McClure's car, was a valid search incident to lawful arrest. Because the heroin evidence found on his person was not the fruit of any unlawful intrusion upon Eusebio's liberty and privacy interests, it was not properly subject to evidentiary exclusion.

**THE JUDGMENT OF THE CIRCUIT COURT FOR CECIL COUNTY IS AFFIRMED. APPELLANT TO PAY COSTS.**