*Anthony J. Richardson*, No. 2386, Sept. Term, 2019 (Opinion by Wright, J.)

**CRIMINAL PROCEDURE – FOURTH AMENDMENT – WARRANT REQUIREMENT – PARTICULARITY** – Following the recovery of a cell phone located in an abandoned backpack, detectives applied for a search and seizure warrant to search the contents of that cell phone. Recognizing that the Fourth Amendment prohibits general warrants and requires that search warrants must "particularly describe the place to be searched and the persons or things to be seized," the Court of Special Appeals concluded that the application and affidavit in support of the warrant in this case was particularized and provided a specific factual basis for probable cause to believe that the cell phone contained evidence relevant to the investigation, and that these details were incorporated into the search warrant.

**CRIMINAL PROCEDURE – FOURTH AMENDMENT – GOOD FAITH EXCEPTION** – The good faith exception to the exclusionary rule of the Fourth Amendment to the United States Constitution permits the admission of evidence obtained pursuant to a warrant later shown to lack probable cause, so long as the officers reasonably relied on the warrant issued by a detached and neutral magistrate. *United States v. Leon*, 468 U.S. 897, 922-24, 104 S. Ct. 3405, 3420-21 (1984). The Court of Special Appeals held that the application and affidavit, as incorporated into the search warrant, contained sufficient particularized facts for an officer to objectively and in good faith rely on the finding of probable cause by a detached, neutral magistrate.

Circuit Court for Prince George's County
Case No.: CT18-1622X

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2386

September Term, 2019

_____

ANTHONY J. RICHARDSON

v.

STATE OF MARYLAND

_____

Friedman,
Shaw Geter,
Wright, Alexander
   (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Wright, J.

_____

Filed: September 7, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

The Appellant, Anthony J. Richardson, was indicted in the Circuit Court for Prince George's County, Maryland, and charged with robbery with a dangerous weapon, first-degree assault, use of a firearm in the commission of a felony, illegal possession of a regulated firearm by a person under the age of 21, and related offenses. After his motion to suppress evidence was denied, appellant entered a conditional plea, with right to appeal, to conspiracy to commit robbery and wearing and carrying a handgun. *See* Md. Code Ann. (1974, 2020 Repl. Vol.) § 12-302 (e) of the Courts & Judicial Proceedings Article ("CJP"). After appellant was sentenced to four years, all but one year suspended (to be served on home detention) for conspiracy to commit robbery, and a consecutive three years, all suspended, for wearing and carrying, he timely appealed, presenting the following question for our review:

Did the circuit court err in denying the motion to suppress?

For the following reasons, we shall affirm.

BACKGROUND

Motions Hearing

On September 28, 2018, Corporal Myron Young, the school resource officer ("SRO") for Crossland High School, located in Temple Hills, Prince George's County, Maryland, responded to a call for a fight in the rear parking lot of the school. Approximately 30 or more students were involved in the fight, including appellant, who was "throwing punches" with other students when Corporal Young intervened. Corporal Young grabbed one of the young men who were punching appellant from behind. He also

testified that he was familiar with most of the students at Crossland High, and he did not recognize appellant.

After the officer intervened, appellant began to get up off the ground. As he did so, a backpack strapped across his body fell to the ground. Both appellant and Corporal Young reached for the bag at the same time. Corporal Young testified that he thought it suspicious that appellant would reach for the bag during the middle of a fight.

Corporal Young picked up the bag first and noticed that the "bag had a decent amount of weight to it," and that he "suspected that there was most likely a weapon in the bag." At that point, appellant "ran off" at "[f]ull speed towards the service road that would lead out to Allentown Road." After appellant left the area, Corporal Young opened the bag, saw a firearm inside, and notified other officers in the area. He also recovered a cell phone and a school ID for appellant associated with another school that was not Crossland High.

On cross-examination, Corporal Young testified that, in his statement memorializing the event, he wrote that "there was an individual from behind that was attempting to jump" appellant. Corporal Young agreed that he and appellant reached for the bag at the same time and that he "snatched" it up first. He also agreed that he searched it within a minute of obtaining control over the backpack.

Corporal Young also maintained that he knew appellant was an "outsider" because he did not recognize him. Agreeing there had been no reports about appellant, the officer confirmed that it had been his intention to take him back to the SRO office to search his

2

person had he not fled the scene. He further testified that "I didn't find the weapon until he was gone as well."

Following this testimony, the motions court heard argument from appellant that the seizure and search of appellant's backpack was not supported by probable cause or reasonable articulable suspicion. Appellant also argued that he did not voluntarily abandon the backpack and that Corporal Young "for no reason grabs the bag, snatches it in his own words, and then immediately searches it with no specific reasonable articulable suspicion, let alone probable cause to do so." Appellant concluded that Corporal Young should have gotten a search warrant before opening the backpack that was left behind at the scene.

The State responded that, when Corporal Young approached the area, he saw appellant fighting with another person. At that point, appellant could have been arrested for the scuffle and his backpack could be seized incident to that arrest. Further, when Corporal Young picked up the backpack, he noticed a weight and thought there might be a weapon in the bag, thus, a search also was supported by reasonable articulable suspicion. Noting that Corporal Young was a licensed SRO, the State argued that the officer could have "detained everybody involved in that fight," including appellant, but that appellant fled. Accordingly, the State continued, "[w]hen he fled, I argue that he abandoned voluntarily the property that was seized by the officer, and at that point, the officer is within his rights to search that property to try and return it to its rightful owner."

Pertinent to one of the issues on appeal, the court also heard argument about the search of a cell phone, pursuant to a search warrant, that was found inside the backpack.

3

Pertinent to our discussion, the search and seizure warrant, identified at the hearing as

Defendant's Exhibit 1, provides as follows:

> Upon reviewing the Application and the accompanying Affidavit of Detective M. Lembo #3821, Prince George's County Police Department, *which is incorporated into this Warrant*, I find there exists probable cause to issue this Search and Seizure Warrant. You are therefore commanded with the necessary and proper assistants to search forthwith the following place, person, and/or motor vehicle and seize the following specified items:
>
> 1. You shall conduct a search on the place, person, and/or motor vehicle located at:
>
> **T-Mobile Space Gray iPhone SE IMEI: 356600080434043**
>
> You shall seize the following items, evidence, and/or contraband:
>
> All information, text messages, emails, phone calls (incoming and outgoing), pictures, videos, cellular site locations for phone calls, data and/or applications, geo-tagging metadata, contacts, emails, voicemails, oral and/or written communication and any other data stored or maintained inside of **T-Mobile Space Gray iPhone SE lMEl:356600080434043**.
>
> 3. Upon execution of this Warrant, you shall leave an inventory of the items seized, together with a copy of this Warrant, Application, and supporting Affidavit (unless previously sealed by court order) with the person from whom the items are seized, or with the person in charge of the premises, or if neither of those persons is present, then in a conspicuous place on the premises.
>
> (Emphasis added).[1]

As indicated in the first paragraph of the warrant, the application and affidavit

expressly were incorporated by reference.  That application and affidavit first avers that

---

[1] On January 19, 2021, this Court granted Appellant's Unopposed Motion to Supplement the Record with Defense Exhibit #1, namely, the search and seizure warrant at issue. Although not admitted during the hearing, we shall refer to the exhibit as Defendant's Exhibit 1 herein. The exhibit is numbered out of sequence from the appellate record, and those numbers will be noted accordingly.

there is probable cause to believe there is property subject to seizure "and more particularly

in violation of Annotated Code of Maryland CR-3.405 (b)1." *See* Md. Code (2002, 2021

Repl. Vol.) § 3-405 (b) (1) of the Criminal Law ("Crim. Law") Article (carjacking).[2] It then

provided a summary of the underlying facts of the robbery and the warrantless seizure of a

backpack dropped by the appellant on the grounds of Crossland High School. The

application and affidavit then provided details related to the search of the items contained

inside the backpack, as follows:

> The bag contained a Smith & Wesson semi-automatic handgun (A181261), school identification card, smart trip cards, Rose Gold iPhone 8+, **T-Mobile Space Gray iPhone SE IMEI: 356600080434043**, gold Samsung cellphone, and a small amount of US currency. Cpl. Young #2872 was able to make a positive identification on the Defendant (Richardson, Anthony) from the school identification card left in the black bag. Arrest warrant D180437880 was obtained in regard to the handgun. While in possession of the **T-Mobile Space Gray iPhone SE IMEI: 356600080434043**, a message was sent to the suspect LetGo account by Det. Booze #2221. The **T-Mobile Space Gray iPhone SE lMEl: 356600080434043** then produced an alert that it had just

---

[2] It is unclear why the application and affidavit refer to the crime of carjacking, both here, and later at the conclusion of the recitation of the factual basis in support of probable cause. There were no facts that a carjacking was involved. Appellant was charged with armed robbery and other related assault and handgun violations. Neither party raises an issue with respect to the erroneous notation of carjacking, therefore, we decline to consider it further. *See generally*, *Ray v. State*, 435 Md. 1, 14 (2013) (The purpose of Md. Rule 4-252 is "to alert both the court and the prosecutor to the precise nature of the complaint, in order that the prosecutor have a fair opportunity to defend against it and that the court understand the issue before it") (citation omitted); *Dow v. State*, 207 Md. 80, 85 (1955) ("This Court has consistently held that if a warrant is essentially valid, or is valid as to one command and not as to another, the parts not essential or invalid may be treated as surplusage") (citing *Carpenter v. State*, 200 Md. 31 (1952), and *Wilson v. State*, 200 Md. 187 (1952), and observing that, in those cases, "the search warrant referred to the wrong statute although it correctly described the crime suspected, and the erroneous reference was held not to invalidate the warrant but to be surplusage").

received a message via the LetGo application. Arrest warrant D180578996 was obtained for the Defendant (Richardson, Anthony) in regard to the armed robbery.

This Detective believes that the **T-Mobile Space Gray iPhone SE IMEI:356600080434043** could contain text messages, emails, phone calls (incoming and outgoing), pictures, videos, cellular site locations for phone calls, data and/or applications, geo-tagging metadata, contacts, emails, voicemails, oral and/or written communication and any other data stored within the cell phone that are related to the carjacking. All events occurred in Prince George's County, Maryland.

The application and affidavit then provided the following justification for the

search of the cell phone:

Your affiant knows that when crimes are committed by more than one person, the individuals committing the crime communicate in advance to plan the crime. When cellular phones are used, certain information is generated and stored in the cellular phone, including call records, text messages, video messages, and picture messages. Furthermore, the call records can create connections between co-conspirators by showing the contact and communication they have leading up to the crime. Finally, the contact lists maintained in the phone can show a connection between the phone number whose records are being analyzed and a suspect being investigated.

The application and affidavit then described the items to be seized as follows:

All information, data, photographs, videos, detail logs, contact lists, and call maintained histories inside of.

**T-Mobile Space Gray iPhone SE IMEI: 356600080434043**

Appellant argued that the search warrant, standing alone, was a general warrant

because it authorized a search for "any and all data or information stored on the cell phone."

Appellant contended that there were "heightened particularity concerns" with respect to

cell phones due to the "breadth of information" available and that there should have been

an "affirmative limitation" on the scope of the search. After discussing *Riley v. California*,

573 U.S. 373 (2014), as well as various out-of-state authority, appellant also argued that the good faith exception did not save the search in this case, again, because the warrant was a general warrant. Upon questioning by the court, appellant also maintained that the inquiry was limited to the warrant itself, and that the court could not consider the application and affidavit in support thereof. For these reasons, appellant argued that the search of the cell phone was unconstitutional.

The State responded by relying on the historic preference for warrants, asserting that the warrant and the application and affidavit, considered together, were sufficiently particularized and that the search was reasonable in this case. The State explained that "[t]his phone was the instrumentality of the robbery. It was what was used to set up the robbery." With respect to the appellant's overbreadth contention, the State noted that appellant did not identify what specific information seized from the cell phone violated his right to privacy or was irrelevant to this investigation. The State maintained that the warrant in this case was narrowly tailored as it related to one specific cell phone and one particular robbery. The State also noted that the cell phone was abandoned, and that appellant did not have any expectation of privacy in the phone in any event.

In response, appellant argued the warrant should have "differentiate[d] between data" on the cell phone and that there was no "judicial control over the search of the hard drives" or information stored on the phone. In this case, the entire contents of the cell phone were seized. Counsel argued that the warrant could have limited the search to types of files or to specific time frames, but instead, the warrant authorized the seizure of all information and data.

At the conclusion of the hearing, the court denied the motion to suppress, as follows:

THE COURT:  There was a call that went out for fights in the back.  And then, what makes it even more creditable, to be honest with you, is when he first saw your client and he was fighting, what he was trying to do at first was to stop another young man from going – getting up behind him to attack him from behind.  He was trying to lessen the tension and the fight.  So why wouldn't I find him creditable that he saw your client fighting at first, when [he] says he was trying to assist your client so he wouldn't get hit from behind?

[DEFENSE COUNSEL]:  Your Honor, I'm entitled to make my argument as so –

THE COURT:  I know you can, but I'm just saying, I find him extremely creditable.  And we're talking about chaos – pure chaos.  Thirty kids, there's fights going on, calls go out. He goes out there.  He sees your client fighting.  He stops another one from coming from behind to hit him.  He notices that he doesn't recognize your client, so he's going to ask him why he's on the property and he has every right to do that, because that's trespass.

And by that time he drops his bag.  He snatches it.  He feels the weight of the bag and feels it to be heavy.  And inside, in fact, based on his observation, he doesn't go to the school and the weight of the bag, he finds a weapon.

Your motion to suppress is denied.  I also find your client abandoned the bag.  Thank you.

With respect to the defective – alleged defect in the warrant, I deny that as well.  Thank you.

Conditional Plea – Statement of Facts

The statement of facts in support of the conditional plea indicated that this case began as an armed robbery of Jonathan James-Park.  Mr. James-Park arranged to buy a PlayStation 4 from a seller he met through an online application, "LetGo."[3]  When he arrived at the pre-arranged meeting point, a person asked him if his name was "Jonathan."

---

[3] LetGo is a listing website for buying and selling used merchandise between registered users.  https://we.letgo.com/

When the victim replied in the affirmative, another individual came out wearing a mask and holding a handgun. Mr. James-Park surrendered his iPhone and his wallet, containing approximately $140 in U.S. currency. Both of the assailants then fled on foot, got into a car, and left the scene.

A subsequent investigation revealed that the LetGo account used to set up the meeting and purported sale was registered to one Malicai Hezekiah Grant. Mr. James-Park identified Mr. Grant as the first person he met at the aforementioned meeting place. Additional investigation resulted in the identification of appellant, identified during the hearing as the defendant, as another suspect in the robbery.

Consistent with the facts elicited at the motions hearing, the court then heard the following recitation of facts:

> Officer Young observed the defendant in an altercation at Crossland High School. During that altercation he observed the defendant drop a bag. Officer Young was able to pick up that bag and when he did so the defendant then ran away from the scene.
>
> A subsequent search of that bag revealed that there was a silver and gray Smith & Wesson semiautomatic handgun that was recovered from the backpack, as well as the defendant's school ID, iPhone that matched the description provided by Mr. James-Park, and another iPhone which was later determined to be the defendant's iPhone. A search was performed on the victim's – the victim confirmed that the iPhone, the rose gold iPhone that was recovered from the bag was his. He responded to the scene and confirmed that. I'm sorry, to the police station.
>
> He also went to the police station and said that the handgun that was recovered looked like the handgun that was used to rob him.
>
> The police served a search warrant on the defendant's phone, and a review of his text messages showed a number of texts being exchanged between the defendant and Mr. Malicai Hezekiah Grant that discussed the robbery,

9

planning of robberies, and who they should target in terms of LetGo accounts.

Specifically, on the day that the defendant's phone was recovered on September 28th there was a message sent to the defendant that said who has got my Letgo on my phone? The defendant responded me. Then there is a conversation in which they are identifying accounts that should be messaged versus who should not be messaged based upon the account details that were available on the LetGo application.

Then the gun, the handgun that was recovered was taken to F.E.U. [Prince George's County Firearms Examination Unit]. Corporal Young responded to F.E.U. They did a test-fire. They confirmed at the time that the gun was recovered it was in an operable condition.

That would have been the State's case, Your Honor. All these events did occur here in Prince George's County, Maryland.

We may include additional detail in the following discussion.

## DISCUSSION

Appellant contends the court erred in not granting his motion to suppress because: (a) Corporal Young lacked reasonable articulable suspicion to search his backpack, any search exceeded its necessary scope, and he did not abandon the backpack; (b) the search warrant for the cell phone was an invalid general warrant that did not particularly describe the place to be searched and the items to be seized; and, (c) the search of the cell phone was not reasonable under the good faith doctrine. The State responds that: (a) appellant abandoned the backpack and that, alternatively, there was reasonable articulable suspicion to seize the backpack and/or the backpack was lawfully seized incident to arrest; (b) the search warrant was particularized and incorporated the information from the application and affidavit in support thereof; and (c) in any event, the officers acted in good faith reliance on the search warrant when they searched the cell phone.

10

Our review of a circuit court's denial of a motion to suppress evidence is "'limited to the record developed at the suppression hearing.'" *Pacheco v. State*, 465 Md. 311, 319 (2019) (quoting *Moats v. State*, 455 Md. 682, 694 (2017)). And the record is examined "in the light most favorable to the party who prevails on the issue that the defendant raises in the motion to suppress." *Norman v. State*, 452 Md. 373, 386, *cert. denied*, 138 S. Ct. 174 (2017). The trial court's factual findings are accepted unless they are clearly erroneous, however, when there is a constitutional challenge to a search or seizure under the Fourth Amendment, this Court performs an "'independent constitutional evaluation by reviewing the relevant law and applying it to the unique facts and circumstances of the case.'" *Grant v. State*, 449 Md. 1, 15 (2016) (quoting *State v. Wallace*, 372 Md. 137, 144 (2002)); *accord Pacheco*, 465 Md. at 319-20.

A. *Appellant abandoned the backpack.*

Appellant first asserts that Corporal Young did not have reasonable articulable suspicion to search the backpack, that any search exceeded its permissible scope, and that the court erred in determining that he abandoned the backpack. The State disagrees, responding that appellant did abandon the backpack, and alternatively, that the search was justified either under reasonable articulable suspicion or incident to a lawful arrest supported by probable cause. Appellant replies that the search incident to arrest rationale does not apply because he was not arrested on the day in question. As shall be explained, we agree with the motions court that the search of the backpack was reasonable because appellant abandoned the backpack. Therefore, it is unnecessary for us to address the

11

alternative rationales. *See Demby v. State*, 444 Md. 45, 51 (2015) ("It is unnecessary to address every argument the parties make in support of their respective sides of the case because, in the end, the question of whether Petitioner was entitled to suppression of the evidence that the police obtained from the cell phone is controlled by application of the good faith doctrine"); *see also Garner v. Archers Glen Partners, Inc.*, 405 Md. 43, 46 (2008) ("[A]n appellate court should use great caution in exercising its discretion to comment gratuitously on issues beyond those necessary to be decided"); *United States v. Nowak*, 825 F.3d 946, 948 (8th Cir. 2016) ("We take up the abandonment issue first because our resolution of the question could make it unnecessary for us to decide the other issues on appeal").

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

"The touchstone of whether a warrantless search or seizure withstands Fourth Amendment scrutiny is reasonableness." *Lewis v. State*, 470 Md. 1, 18, 233 A.3d 86, 96 (2020) (citing *Maryland v. King*, 569 U.S. 435, 447 (2013); *Pacheco*, 465 Md. at 320). Further:

> "What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985) (citation omitted). "[S]ubject only to a few specifically established and well-delineated exceptions, a warrantless search or seizure that infringes upon the protected interests of an individual is presumptively unreasonable." *Grant*, 449 Md. at 16–17, 141 A.3d 138 (footnote omitted);

12

> *see also Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L.Ed.2d 576 (1967). "Whether a particular warrantless action on the part of the police is reasonable under the Fourth Amendment depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Pacheco*, 465 Md. at 321, 214 A.3d 505 (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (internal quotations omitted)).

*Lewis*, 470 Md. at 18.

It is well-settled that when a defendant intentionally "abandons" his right in or to property or a specific area, the constitutional protection against unreasonable searches and seizures does not apply. *Stanberry v. State*, 343 Md. 720, 731 (1996), *cert. denied*, 520 U.S. 1210 (1997). The critical inquiry is not whether there has been an abandonment of all formal rights concerning the property or place but, rather, whether the party has relinquished any reasonable expectation of privacy in it. *Stanberry*, 343 Md. at 737. As such, a search of abandoned property is not a "search" protected by the Fourth Amendment because the state action does "not encroach upon the privacy upon which one may justifiably rely." *Morton v. State*, 284 Md. 526, 531 (1979).

In assessing whether property is abandoned, "[f]irst, we ask whether the individual, by his conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that 'he [sought] to preserve [something] as private.' . . . Second, we inquire whether the individual's expectation of privacy is 'one that society is prepared to recognize as reasonable.'" *Bond v. United States*, 529 U.S. 334, 338 (2000) (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (internal quotation marks omitted)). Moreover:

> Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts . . . All relevant circumstances existing at the time of the alleged abandonment should be

considered . . . Police pursuit or the existence of a police investigation does not of itself render abandonment involuntary . . . The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.

*Duncan v. State*, 281 Md. 247, 265 (1977) (quoting *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973)); *see also Powell v. State*, 139 Md. App. 582, 589 (holding that suspect who placed a brown paper bag on the curb of a public street had abandoned reasonable expectation of privacy in doing so), *cert. denied*, 366 Md. 248 (2001).

Considered in the light most favorable to the State as the prevailing party on the motion, Corporal Young came upon appellant while he was involved in a fight in the rear parking lot behind Crossland High School. After Corporal Young grabbed one of appellant's assailants, appellant got up and the backpack strapped to his person fell to the ground. According to Corporal Young, both he and appellant reached for the backpack at the same time, but the officer was the first one that grabbed the bag. As soon as Corporal Young did so, appellant fled the area.

We are persuaded that the totality of the circumstances supported a fair inference that it was appellant's intent to relinquish the backpack and abandon it once he fled the area. *See, e.g. United States v. Nowak*, 825 F.3d at 948 ("Nowak did not deny ownership of the backpack but he physically relinquished it when he fled the scene of the traffic stop, leaving the backpack behind in the car"). As appellant did not retain any reasonable expectation of privacy in the backpack, we conclude that it was lawful for Corporal Young to open the bag and view its contents.

14

B. *The search warrant, as supported by the accompanying application and affidavit, was particularized to authorize the search of the cell phone found in the abandoned backpack.*

Appellant next asserts that the search of the cell phone found inside that bag was unlawful because the search warrant was general and not particularized to the places to be searched and the things to be seized. The State responds that the application and affidavit was incorporated into the search warrant and provides sufficient detail to meet the particularity requirement. Appellant replies that the application and affidavit was not incorporated, thus the premise of the State's argument fails on the merits. As shall be explained, we conclude that the application and affidavit met the particularity requirement and that these details were incorporated into the search warrant in this case.[4]

"[W]here a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial warrant." *Riley v. California*, 573 U.S. 373, 382 (2014). The Court of Appeals recently restated the standard of review of judicially approved warrants:

> The Fourth Amendment and Article 26 of the Maryland Declaration of Rights require that no warrant, or in this case, court order, shall issue without probable cause. *See* [*Birchead v. State*, 317 Md. 691, 700 (1989)]. We do not conduct a *de novo* inquiry into whether the court order in this case was

---

[4] We note that, during the motions hearing, the State argued that the cell phone was abandoned, that "the search warrant wouldn't be necessary in its inception because it was abandoned," and that appellant did not have any "expectation of privacy in the contents of that phone." To the extent that this raises a separate question of standing, the State has not pursued this argument on appeal, and we do not consider it further. *See McCracken v. State*, 429 Md. 507, 516 n.6 (2012) (declining to address a separate argument that evidence was properly seized under the Fourth Amendment where that argument was abandoned by the State at oral argument).

supported by probable cause, rather we must determine whether the "*issuing judge had a substantial basis* for concluding that the [court order] was supported by probable cause." [*Patterson v. State*, 401 Md. 76, 89 (2007)] (emphasis added) (citing *Greenstreet v. State*, 392 Md. 652, 898 A.2d 961 (2006)). This Court uses a deferential standard of review when evaluating an issuing court's determination of probable cause. *Stevenson v. State*, 455 Md. 709, 723 (2017); *Malcolm v. State*, 314 Md. 221, 229 (1988) ("As the key protection from unreasonable government searches, warrants continue to be favored [by] law."). "[S]o long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Stevenson*, 455 Md. at 723-24 (citation omitted); *see also Illinois v. Gates*, 462 U.S. 213, 236 (1983) ("[W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review.").

The substantial basis test does not require "direct evidence that the evidence sought would be found in the place to be searched." *Stevenson*, 455 Md. at 724. The substantial basis of an issuing court may be predicated on an affiant's professional experience and inferences drawn therefrom in deciding whether probable cause exists. *Moats v. State*, 455 Md. 682, 700-01 (2017) (quoting *Ornelas v. United States*, 517 U.S. 690, 700 (1996)). The substantial basis test also recognizes the inherent flexibility of the probable cause standard. "[P]robable cause may be inferred from the type of crime, the nature of the items sought, the opportunity for concealment, and reasonable inferences about where the defendant may hide the incriminating items." *Holmes v. State*, 368 Md. 506, 522 (2002).

*Whittington v. State*, __ Md. __, No. 35, Sept. Term, 2020 (filed June 2, 2021) (slip op. at 30-31) (parallel citations omitted).

The Fourth Amendment requires that a search warrant must "particularly describ[e] the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. The purpose of this provision was "to prevent general searches." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). And, "the scope of a lawful search is 'defined by the object of the search and the places in which there is probable cause to believe that it may be found.'" *Id.* (quoting *United States v. Ross*, 456 U.S. 798, 824 (1982)).

16

Further, "the description of the limited places to be searched must be 'definite enough to prevent any unauthorized and unnecessary invasion' of privacy rights." *Eusebio v. State*, 245 Md. App. 1, 26 (2020) (citation omitted). And, "[t]he description must be 'such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended.'" *Id*. (quoting *Steele v. United States*, 267 U.S. 498, 503 (1925)). "These related requirements - limitedness and definiteness - ensure that a warranted search is "carefully tailored to its justifications" and cannot lawfully devolve into "the wide-ranging exploratory searches the Framers intended to prohibit." *Id*. (quoting *Garrison*, 480 U.S. at 84). As this Court noted:

> Our formulation of these concepts owes much to Professor Wayne R. LaFave's explanation of the particularity requirement in his Search & Seizure treatise. There, he explains that particularity is made of two components: "*focusing*" (like definiteness, describing the place to be searched in such a way that "minimize[s] the risk that officers executing search warrants will by mistake search a place other than the place intended by the magistrate") and *probable cause* (like limitedness, ensuring that a search is limited only to the particular places for which a magistrate finds there is probable cause to believe incriminating evidence will be found). 2 Wayne R. LaFave, *Search & Seizure* §§ 4.5, 4.5(d) (5th ed. 2019) (emphasis added).

*Eusebio*, 245 Md. App. at 26 n.7.

Appellant directs our attention to *Riley, supra*. There, the Supreme Court held that the police must generally obtain a search warrant before searching a lawfully seized cell phone. *Riley*, 573 U.S. at 386. The rationale for this ruling was explained by our Court of Appeals as follows:

> It would not be an overstatement to characterize cell phones as the repository of personal effects in digital form that heretofore would be found in physical form in the home or at the office. It therefore follows that, regardless of the

17

"broad array" of information a cell phone may hold, the police nonetheless may seize a cell phone and search its digital contents with a duly authorized warrant that complies in all respects with the dictates of the Fourth Amendment. This is consistent with the Supreme Court's longstanding Fourth Amendment jurisprudence.

*Moats v. State*, 455 Md. 682, 703 (2017) (citing *Riley*, 573 U.S. at 401-02).

Both parties inform us that there is no Maryland case on point and both direct us to several out-of-state cases in support of their respective arguments. The State directs our attention to *Moats, supra*, and we concur that that case is instructive. There, police were investigating a case involving drug distribution and alleged sexual assault. *Moats*, 455 Md. at 686. After an interview, wherein Moats admitted to drug use on the night in question, but denied any involvement in the sexual assault, Moats was arrested, and his cell phone was seized incident to arrest. *Moats*, 455 Md. at 687. Police applied for a search warrant for the cell phone and the affidavit in support indicated that "Your Affiant knows through his training and experience as a Criminal Investigator that individuals who participate in such crimes communicate via cellular telephones, via text messages, calls, e-mails etc." *Moats*, 455 Md. at 688. Accordingly, the affiant prayed that a search warrant be issued in order to, in pertinent part:

> (A) Seize and cause to be completely examined by Your Affiant or, if necessary, a competent forensic cellular phone examiner, any and all electronic data processing and storage devices located in the above-described cellular telephone. Any phone call records being sent or received on these devices, any text mail "messages" sent or received on these devices, any stored, un-stored, unsorted phone numbers on these devices, any photographs stored on these devices, any external memory devices used on these devices in or incidental to the mentioned aforesaid crimes, as defined in the Annotated Code of Maryland, amended and revised; . . .

*Moats*, 455 Md. at 690.

18

The search warrant issued, and investigators discovered sexually explicit photographs of a 15-year-old girl. *Moats*, 455 Md. at 690. Moats was indicted for child pornography and second-degree assault. *Id.* In seeking to suppress this evidence, Moats challenged whether there was a nexus between the drug-related crimes he was originally arrested for and information that might be found on his cell phone. *Id.* at 691, 700. He claimed that the nexus was not established by the affiant's general assertion " that individuals who participate in 'such crimes' communicate via cell phones." *Moats*, 455 Md. at 700. The State responded that, under the "substantial basis" test, a nexus could be supported by the "detailed allegations of criminal wrongdoing in the warrant affidavit." *Id.* The majority opinion agreed with the State, observing that "[t]he information [the affiant] set forth in the warrant affidavit supports a reasonable inference that Petitioner's cell phone contained evidence of his connection to the drug-related charges and sexual assault investigation." *Id.* at 701. Further, the Court concluded that there was a substantial basis for the warrant-issuing judge to authorize the search of Moats' cell phone. *Id.* at 704-05.

Notably, the majority commented on issues a warrant-issuing judge might consider when authorizing a warrant for a cell phone:

> Not every affidavit will (or should) result in issuance of a warrant to search a cell phone. We can imagine situations in which the nature of the crime will not support a warrant to search the suspect's cell phone; examples might include traffic offenses, public nuisance crimes, and the like. Even in cases where the connection between the suspected crime and the cell phone is more likely to be established, the lack of factual detail or other circumstances might countenance against a finding of probable cause. The affiant's professed training and experience might fall short of demonstrating to the judge's satisfaction that the affiant's prediction can be relied upon in determining whether the evidence sought will be found in the cell phone the affiant wants to search.

19

In the end, each application for a warrant to search a cell phone is to be addressed by the judge on the merits of the affidavit. The judge will necessarily consider the nature of the crime being investigated, the facts provided in support of the connection between that crime and the cell phone to be searched, and, depending upon the affiant's demonstrated training and experience, the degree to which the deference owed to the affiant adds to the ultimate decision. The decision of the warrant-issuing judge will ultimately rest on whether, in its totality, the affidavit sets forth a fair probability that the information will be found in the cell phone to be searched.

*Moats*, 455 Md. at 705-06.

In a concurring opinion, two members of the Court agreed there was good faith basis for the motions court to deny the motion to suppress but would have found that the search warrant was not particularized and was "overly broad." *Moats*, 455 Md. at 708 (Adkins, J., concurring). The concurrence stated that:

[T]emporal limitations on data searches may be essential to satisfy the particularity requirement of the Fourth Amendment. Although the affiant knew when the alleged CDS distribution occurred, the warrant authorized him to search through every scrap of data on Petitioner's phone. This includes any "external memory devices" - presumably including any cloud storage - regardless of the temporal proximity to criminal conduct justifying the search. I would not read the Fourth Amendment, and its particularity requirement, to allow such a warrant.

*Moats*, 455 Md. at 708 (Adkins, J., concurring).

Here, there is no dispute that there is no specific temporal limitation in the search warrant itself. Further, the search warrant does not limit the contents or files on the cell phone that may be accessed and searched. In contrast, however, the application and affidavit in support thereof, provides a specific factual basis for probable cause. Those facts are specific to the armed robbery of Mr. James-Parks, which was perpetrated by an apparent bait-and-switch using a LetGo account, and recovery of a cell phone from

20

appellant's abandoned backpack. The facts also set forth that the police sent a message to the aforementioned LetGo account and an alert was received on the cell phone that was recovered from the abandoned backpack in question. We are persuaded that there was a substantial basis for the magistrate to conclude that these facts, as particularized in the application and its accompanying affidavit, provided probable cause to search the cell phone.

The State and appellant dispute whether this provision was incorporated into the search warrant that issued and was executed. The Supreme Court has provided that a reviewing court "may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." *Groh v. Ramirez*, 540 U.S. 551, 557-58 (2004); *see also Wood v. State*, 196 Md. App. 146, 166 (2010) (holding that it was "permissible to look to the affidavit as well as the warrant since the affidavit is part of the warrant and incorporated by reference therein"). As this Court explained, "where a supporting affidavit is made a part of a warrant and incorporated by reference therein, that affidavit may be looked to help supply necessary particularization." *Hignut v. State*, 17 Md. App. 399, 417 (1973) (observing that the incorporation of the application and affidavit "could not have been more clear-cut").

Here, the search warrant expressly provides: "Upon reviewing the Application and the accompanying Affidavit of Detective M. Lembo #3821, Prince George's County Police Department, *which is incorporated into this Warrant*, I find there exists probable cause to issue this Search and Seizure Warrant." We hold that the detailed, particularized facts

21

provided in the application and affidavit were incorporated into the search warrant in this case. The motions court properly denied the motion on this ground.

C. *The officers acted in good faith reliance on the search warrant.*

Moreover, even assuming there was a defect in the search warrant, nevertheless, evidence seized under a warrant, subsequently determined to be invalid, may be admissible if the officers executing the warrant acted in objective good faith with reasonable reliance on the warrant. *United States v. Leon*, 468 U.S. 897, 919-20 (1984). As the Supreme Court explained, because "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates," the rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." *United States v. Leon*, 468 U.S. at 916, 919. *Accord Whittington, supra*, (slip op. at 37). *See also Utah v. Strieff*, __ U.S. __, 136 S. Ct. 2056, 2061 (2016) ("Suppression of evidence . . . has always been our last resort, not our first impulse") (quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)). But as the Supreme Court also explained:

> Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued.
>
> Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. The exception we recognize today will also not apply in cases where the issuing magistrate wholly abandoned his judicial role . . . ; in such circumstances, no reasonably well-trained officer should rely on the warrant. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Finally,

22

> depending on the circumstances of the particular case, a warrant may be so facially deficient - *i.e.*, in failing to particularize the place to be searched or the things to be seized - that the executing officers cannot reasonably presume it to be valid.

*United States v. Leon*, 468 U.S. at 922-23 (cleaned up). *Accord Patterson*, 401 Md. at 104.

Appellant relies on the fourth of these, contending that the officers in this case could not have objectively relied on the search warrant because it failed to particularize the place to be searched or the things to be seized. *See Ferguson v. State*, 157 Md. App. 580, 599-600 (2004) ("[I]n order to be facially valid, the warrant must identify both the place to be searched and the items to be seized as well as the criminal statute allegedly violated") (citing *McDonald v. State*, 347 Md. 452, 473 (1997)).

Here, the application and affidavit for search and seizure warrant, which we conclude was incorporated into the Search Warrant, averred that there was probable cause to believe that there was property subject to seizure, namely, a T-Mobile Space Gray iPhone, as specifically identified in the application and affidavit. According to the factual basis in support of the application, a message was sent to the LetGo account associated with the purported seller of the original item sought to be purchased by the victim, and the aforesaid iPhone produced an alert associated with that LetGo account. Based on this, the affiant believed that the subject iPhone contained text messages, emails, phone calls, pictures, videos, cellular site locations, etc. . . . The application continued that the affiant knew that when cell phones are used in connection with crime, the phone generates certain information, establish connections between co-conspirators through contacts and

23

communications. For these reasons, the application requested a search warrant for the subject iPhone. The search warrant expressly incorporated the application and affidavit. The search warrant, signed by a neutral judicial officer, found probable cause to authorize the search of the subject iPhone and seizure of all information, text messages, emails, etc. . . . stored or maintained on the iPhone.

Based on this, we are persuaded that the application and affidavit as incorporated into the search warrant issued by the court contained sufficient particularized facts for an officer to objectively and in good faith rely on the finding of probable cause by a detached, neutral magistrate. The motions court properly denied the motion to suppress.

**JUDGMENTS AFFIRMED.
COSTS TO BE ASSESSED
TO APPELLANT.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/2386s19cn.pdf